(92 South. 55)

No. 24837.

## CONTINENTAL BANK & TRUST CO. v. Succession of McCANN.

(May 1, 1922)

*(Syllabus by the Court.)*

**1. Chattel mortgages ⬦47—Description of all property owned by mortgagor and located on certain premises is insufficient.**

Where a statute requires that a chattel mortgage shall be in writing, setting out a full description of the property, so that the same may be identified, and provides that the recordation thereof shall be notice to all parties, an alleged description reading simply "all the property owned by the mortgagor, and now located on certain premises," serves neither to describe nor identify any property, nor to give the notice intended by the statute; and hence no mortgage results therefrom.

*(Additional Syllabus by Editorial Staff.)*

**2. Chattel mortgages ⬦138(1)—Vendor's lien takes priority over chattel mortgage subsequently made.**

Under Act No. 198 of 1918, § 4, a vendor's lien, though unrecorded, primes a chattel mortgage subsequently given by the vendee.

**3. Sales ⬦311—Vendor's privilege not lost by alienation without delivery.**

Under Civ. Code, arts. 3217 and 3227, a vendor's privilege is not lost by the alienation of the thing by the purchaser unless followed by delivery.

**4. Chattel mortgages ⬦127—Mortgage of all property owned by mortgagor did not cover property which his administrator acquired by completing contract.**

Where an oil well drilling contract required the driller to furnish the casing, and provided that it was to become the owner's property, but he failed to furnish it, and it was furnished by the owner and the cost deducted from the contract price, which only became due when the driller's administratrix completed the contract, the casing was never owned by the driller, and was not covered by a chattel mortgage of all of the property which he owned and then located on certain leases.

Appeal from First Judicial District Court, Parish of Caddo; John R. Land, Judge.

Proceeding on the opposition of the Continental Bank & Trust Company to the account of the administratrix of J. B. McCann. Judgment approving the account, and the opponent appeals. Affirmed.

Cook & Cook, of Shreveport, for appellant.

Clifton F. Davis, of Shreveport, for appellee.

By Division C, composed of Justices DAWKINS, ST. PAUL, and THOMPSON.

ST. PAUL, J. This is an opposition to an administrator's account in an insolvent succession. The deceased had granted to the opponent, Continental Bank & Trust Company, a chattel mortgage on two "complete rotary drilling rigs," each consisting of boiler, engine, draw works, rotary pumps, traveling blocks, crown blocks, drilling and boiling lines, elevators, wrenches, bits, and all necessary small tools; one having 3,500 feet, and the other 2,600 feet, of 4-inch drill stem with tool joints; the one having 3,500 feet of drill stem, being located at the Briceland oil well, in Bienville parish, and the other having the 2,600 feet of drill stem, being located at the Bowden oil well in Jackson parish; both of which wells the deceased was then drilling for the Phillips Petroleum Company on lands held by the latter under oil leases.

The mortgage also contained the following clause:

"It is the intention herein of the mortgagor to mortgage all of the property which he owns and now located upon the two leases above described."

The opponent claimed mortgage rights and superiority over all other creditors of the deceased on the proceeds of both the above-mentioned drilling rigs, and also (under the clause last mentioned) upon the proceeds of about 4,167 feet of 8-inch iron pipe or oil well casing, sold for $1.25 per foot, or $5,208.75 for the whole, of which 1,945 feet had been salvaged from the Bowden well, and 1,320

feet or 66 joints, lay at the Briceland railroad station (about five miles from the Briceland well), from which said pipe had never been removed; the rest, say 902 feet, having been salvaged from the Briceland well; both wells having turned out non-producers. The Continental Supply Company, vendor of the drilling rig at the Bowden well, also intervened, claiming priority over the proceeds thereof under its vendor's lien.

The administratrix recognized the claim of the bank to the proceeds of the rig at the Briceland well, and these are not involved in this controversy. She recognized the vendor's lien of the supply company on the rig at Bowden well as superior in rank to the bank's chattel mortgage, and she rejected the bank's claim for the proceeds of the iron pipe, as not covered by the mortgage. The district judge approved her account as thus made, and the bank appeals.

### I.

[2, 3] In Weiss v. Hudson Construction Co. (our No. 24342) 91 South. 525,[1] we held that a vendor's lien (which need not be recorded) primed a chattel mortgage subsequently given by the vendee. See section 4 of act 198 of 1918. We adhere to that ruling. The only new light in which the matter is now presented is that a mortgage is a species of alienation whereby the vendor's lien is extinguished. But the vendor's privilege is not lost by the "alienation" of the thing, unless followed by delivery; for the privilege continues as long as the property remains "in the possession of the purchaser." C. C. arts. 3217, 3227.

### II.

There are two reasons why the chattel mortgage did not cover the iron pipe. The first is that it was not intended that it should; the second is that the property is not sufficiently described.

[1] Ante, p. 1.

[4] The declared intention of the mortgagor was to mortgage, in addition to the two drilling rigs, "all of the property which he owns, and now located upon the two leases." But, as we read this record, the deceased never did own this 8-inch pipe, which became the property of the succession only after his death.

By the terms of his drilling contract he was to drill the two wells and furnish the casing, said casing to become the property of the owner, and he was to receive $35,000 for each well, payable when it reached a depth of 3,000 feet. But he never did furnish the 8-inch casing. That was furnished and paid for by the owner, the cost thereof being afterwards deducted from the contract price, which latter became due only when the administratrix, with the consent of the court, completed the two wells. And it was only by virtue of the agreement which she entered into with all parties for that purpose that the pipe and salvage from the wells were to become the property of the estate and an asset of the succession.

[1] As to the alleged description, "all of the property which the mortgagor owns and now located upon the two leases," that is entirely insufficient to comply with the statute, which requires that such mortgage "shall be in writing, setting out a full description of said property to be mortgaged, so that the same may be identified." Section 2, Act 198 of 1918.

As the statute also provides (section 4) that such "mortgage shall be a lien on the property mortgaged from the time same is filed for recordation, which filing shall be notice to all parties of the existence of such mortgage," it is clear that the full description sufficient to identify the property and serve as a notice to all parties should appear in the written instrument itself, so that when recorded it will serve the purpose intended by the statute.

The description herein relied upon describes no property, identifies nothing, and serves no purpose whatever as the notice intended by the statute. See Durel v. Buchanan, 147 La. 804, 812, 86 South. 189.

We think the trial judge did not err.

### Decree.

The judgment appealed from is therefore affirmed.